UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

              MEMORANDUM OPINION
v.               AND ORDER
              Criminal No. 13-257 ADM/LIB

Albert Terrell Ellis,
a/k/a "Alvin Ellis,"

        Defendant.

_____

Thomas Calhoun-Lopez, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Kurt B. Glasser, Esq., Smith & Glasser, LLC, Minneapolis, Minneapolis, MN, and Manvir K. Atwal, Esq., Office of the Federal Defender, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Albert Terrell Ellis's Objection [Docket No. 40] to Magistrate Judge Leo I. Brisbois's March 17, 2014 Report and Recommendation [Docket No. 39] ("R&R"). Judge Brisbois recommends denying Ellis's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 18], Ellis's Motion to Suppress [Docket No. 31], and Ellis's Motion to Dismiss Indictment [Docket No. 30]. For the reasons stated below, the Court overrules Ellis's Objection and adopts Judge Brisbois's R&R.

## II. BACKGROUND

The factual history of this dispute is more fully recited in Judge Brisbois's R&R and is incorporated here by reference. Only the relevant of facts are stated below.

During the events in question, Ellis was living with A.G., a woman, in a duplex unit

rented by J.C., another woman. In September 2012, the Duluth police department learned from a confidential informant (CI) that the CI had purchased heroin from an unidentified black male living in J.C.'s apartment.

On October 10, 2012, police received a phone call from J.C.'s mother, indicating J.C. was possibly at risk of harm. The police dispatched Investigator Matthew McShane and Officers Rendulich and Johnson to the duplex.[1]

Officer Rendulich arrived on scene first, and observed Ellis and A.G. loading belongings into a Ford Expedition outside the duplex. The duplex had an upper unit and a lower unit, with a shared storage area in the basement. At an evidentiary hearing in this case, Ellis testified Rendulich patted him down and instructed him to remain outside while the officer went inside.

Investigator McShane testified that when he arrived at the scene, Rendulich and Ellis were standing in the front yard and speaking in a casual manner. Rendulich then went inside while McShane remained outside with Ellis. Ellis testified that he did not feel free to leave. Ellis told McShane that J.C. and A.G. had argued, and that J.C. had instructed them to leave the apartment. McShane and Ellis then went inside the apartment so Ellis could continue removing his and A.G.'s belongings. At the same time, Rendulich and J.C. stepped outside.

At some point, Officer Rendulich instructed Investigator McShane via radio that he should conduct a pat-down search of Ellis. McShane testified he did not know if Rendulich had previously conducted a pat-down search of Ellis. McShane believed it unlikely Officer Redulich would have conducted a pat-down search and then subsequently instructed McShane to conduct a second pat-down. McShane testified that he asked Ellis if he would consent to a search of his

---

[1] The officers' first names are not available from the record.

person, and Ellis gave verbal consent while raising his arms as a physical expression of consent. McShane conducted the search, discovered bundles of cash, and returned them to Defendant's pocket. McShane described the interaction as polite and cordial.

Defendant agreed the interaction was cordial, but testified McShane did not ask to conduct the search. Instead, McShane simply stated, "I need to pat you down," and Ellis thus did not feel he could refuse. However, Ellis also testified the officers allowed him to move around freely and to continue removing his belongings from the apartment. Ellis confirmed that he raised his arms as a sign of consent to the search. After the search, Ellis and A.G. left the scene in the Ford Expedition.

Meanwhile, J.C. told Officer Rendulich that Ellis kept a firearm and ammunition in the shared basement storage area of the building. She suggested he search the basement, escorted him there, and then showed him ammunition she said belonged to Ellis. Rendulich advised McShane of the ammunition. About 15 to 20 minutes later, as Ellis and A.G. left the scene, McShane went into the basement and seized the evidence.

On October 23, 2013, the Government indicted Ellis with four charges relating to his status as felon in possession of a firearm and his possession of heroin with intent to distribute.

## III. DISCUSSION

**A. Standard of Review**

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1). "The district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim.

P. 59(b)(3).

Ellis filed a motion to suppress evidence on December 2, 2013. On February 24, 2014, Ellis filed a second motion to suppress as well as a motion to dismiss the Indictment. In the R&R, Judge Brisbois recommends denying all three motions. Ellis objects to the denial of his motion to suppress evidence relating to two pat-down searches of his person. Objection at 1-3. Ellis also objects to the denial of his motion to suppress the evidence seized from the basement of an apartment where he was a guest. Id. at 3-4. Ellis does not object to Judge Brisbois's recommendation with regard to the motion to dismiss or any other issue.

## B. Pat-Down Searches

### 1. Rendulich Pat-Down

Judge Brisbois concluded that Ellis's testimony regarding the occurrence of the first pat-down was not credible because it contradicted Investigator McShane's testimony, and because it was unlikely Officer Rendulich would have directed McShane to conduct a second pat-down mere minutes after conducting a pat-down himself. Based on a review of the testimony at the evidentiary hearing, the Court agrees with Judge Brisbois. Even if the first pat-down took place, the police obtained no evidence from this search. Thus, its only possible relevance is its impact on Ellis's voluntary consent to the pat-down search conducted by McShane.

### 2. McShane Pat-Down

In determining whether consent to a search was voluntary, a court looks to the totality of the circumstances, including the following factors:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections

4

> that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

United States v. Dunning, 666 F.3d 1158, 1165 (8th Cir. 2012) (quotation omitted) (edit original).

Consent can be indicated nonverbally using gestures or cues. United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001). "The precise question is not whether [the defendant] consented subjectively, it is whether his conduct would have caused a reasonable person to believe that he consented." Id. (holding consent to search reasonably inferred from defendant's gesture of opening arms). Many gestures may indicate consent. See, e.g., United States v. Mendoza–Cepeda, 250 F.3d 626, 627 (8th Cir. 2001) (raising arms in response to request); United States v. Gleason, 25 F.3d 605, 607 (8th Cir. 1994) (assistance and cheerful demeanor).

Although some factors are neutral, most of the factors weigh heavily in favor of finding voluntary consent. Ellis is an adult who described himself as intelligent and capable of expressing himself clearly. McShane also testified that he saw no signs Ellis was intoxicated or under the influence of drugs; their interactions were "casual" and cordial. Although there is no indication Ellis was advised of his Miranda rights before the search, Ellis testified that he has had many prior encounters with law enforcement, including multiple felony convictions, and fully understands the Miranda rights.

The remaining factors also weigh in favor of finding voluntary consent. Ellis was not

5

physically detained at any point. Ellis continued to move about freely and load belongings into his car after the search. Second, McShane did not threaten, intimidate, or punish Ellis to obtain his consent. Third, the police did not use promises or misrepresentations to obtain Ellis's consent. Fourth, Ellis was not in custody when he gave his consent. Fifth, Ellis gave his consent outdoors in a public place, in full daylight. Sixth, Ellis did not object to the search. On the contrary, Ellis maintained a cordial demeanor and raised his arms voluntarily when asked to submit to the search. This voluntary compliance demonstrates Ellis's consent. See Mendoza–Cepeda, 250 F.3d at 627. Even assuming the first pat-down by Rendulich occurred, the record demonstrates Ellis voluntarily consented to the second search, if not both.

Because the totality of the circumstances shows Ellis voluntarily consented to the pat-down search conducted by McShane, Ellis's motions to suppress evidence from this pat down are denied.

### C. Basement Search

The Eighth Circuit has "rejected the notion of a generalized expectation of privacy in the common areas of an apartment building." United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999) (no reasonable expectation of privacy in hallway closet shared by other tenants) (citing United States v. McGrane, 746 F.2d 632, 634 (8th Cir. 1984) (seizure of drugs from basement storage locker legal, despite law enforcement entering unlocked basement without consent or warrant)). Also, overnight guests have a lesser expectation of privacy than tenants. United States v. Oates, 173 F.3d 61, 656-57 (8th Cir. 1999) (search of an overnight guest's bedroom with primary tenant's consent was legal).

Ellis argues he had a reasonable expectation of privacy in the basement storage area

because it was not a common area. In his testimony, however, he acknowledged the storage area was not linked to a specific apartment. Also, the only door to the basement was the door to the building itself, making it accessible to anyone in the building. Given the nature of the basement area, no reasonable expectation of privacy existed. Even if a reasonable expectation of privacy existed, the tenants in the building enjoyed this expectation, and not Ellis, who was staying there as a guest. As a result, Investigator McShane's seizure of the ammunition from the basement was lawful.

McShane's seizure was also lawful because J.C. granted consent to enter and search the basement. J.C. not only allowed the officers to search the storage area of her apartment, she suggested the search and accompanied Officer Rendulich during his first trip to the basement. Ellis argues that when J.C. left the apartment, she withdrew her consent to the search. But there is no indication J.C. told the police she was leaving the premises, nor is there any indication she changed her mind about the search before leaving. A reasonable person would not have understood J.C.'s departure as withdrawing consent. J.C. voluntarily left, without objecting, while having full knowledge that the officers were still conducting the search. At most, her decision to leave the duplex was ambiguous: not the kind of unequivocal action necessary to withdraw consent. See United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004) (holding withdrawal of consent to search must be with unequivocal words or actions). As a result, whether Ellis had an expectation of privacy or not, the officers' search of the basement was constitutional.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ellis's Objection [Docket No. 40] is **OVERRULED**; and

2. Judge Brisbois's March 17, 2014 Report and Recommendation [Docket No. 39] is

    **ADOPTED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 7, 2014.